GIBSON, DUNN & CRUTCHER LLP
PETER S. MODLIN, SBN 151453
  pmodlin@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 941111-3715
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Plaintiff WESTERN STATES
PETROLEUM ASSOCIATION

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN STATES PETROLEUM ASSOCIATION, a California not-for-profit corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>THE CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH STANDARDS BOARD, together with its members, JOSEPH M. ALIOTO, JR., DAVID THOMAS, CHRIS LASZCZ-DAVIS, KATE CRAWFORD, DAVID HARRISON, and NOLA J. KENNEDY, in their official capacities, and THE CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY, together with its Secretary, YANA GARCIA, in her official capacity.<br><br>            Defendants. | CASE NO. 2:19-cv-01270-DAD-SCR<br><br>**NOTICE OF MOTION AND MOTION FOR VOLUNTARILY DISMISSAL PURSUANT TO FRCP 41(a)(2)**<br><br>**<u>Hearing</u>**<br>Date:    November 5, 2024<br>Time:    1:30 p.m.<br>Place:   Courtroom 4<br>Judge:   Hon. Dale A. Drozd |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE THAT on November 5, 2024, at 1:30 p.m., or as soon thereafter as

3   the matter may be heard, in Courtroom 4 of the United States District Court for the Eastern District of

4   California, located at 401 I Street, Sacramento, California, 95814, before the Honorable Dale A.

5   Drozd, judge presiding, Plaintiff Western States Petroleum Association will and hereby does move

6   under Federal Rule of Civil Procedure 41(a)(2) for a court order dismissing this action.

7       This Motion is based on this Notice of Motion and Motion and attached settlement agreement,

8   and concurrently lodged Proposed Order, and on such further evidence and argument that may be

9   presented prior to or at the hearing on this Motion.

10

11                                   Respectfully submitted,

12  DATED:  September 23, 2024         GIBSON, DUNN & CRUTCHER LLP

13

14                                   By:    /s/ Peter S. Modlin
                                         Peter S. Modlin
15                                       Attorneys for Plaintiff
                                         WESTERN STATES PETROLEUM
16                                       ASSOCIATION

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR VOLUNTARILY DISMISSAL PURSUANT TO
FRCP 41(a)(2)
Case No. 2:19-cv-01270-DAD-SCR

Gibson, Dunn &
Crutcher LLP

Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff Western States Petroleum Association ("WSPA"), by and through undersigned counsel, hereby requests that the Court grant voluntary dismissal of Plaintiff's claims without prejudice.  A court order is required for dismissal at the plaintiff's request where the opposing party has already answered or moved for summary judgment, or where all parties appearing in the action have not stipulated to dismissal.  *See* Fed. R. Civ. P. 41(a)(2).  Dismissal under Federal Rule of Civil Procedure 41(a)(2) is, by default, without prejudice.  *Id.*

WSPA originally brought this action, pursuant to the Supremacy Clause of the United States Constitution and 42 U.S.C. § 1983, seeking a declaration that certain regulations applicable to petroleum refineries are invalid because they are preempted by the National Labor Relations Act ("NLRA").  *See* Dkt. 1 at 13–15.  These regulations were promulgated by the California Occupational Safety and Health Standards Board and by California Governor's Office of Emergency Services (collectively, "Defendants")[1] and codified at California Code of Regulations, tit. 8, section 5189.1 (known as the CalPSM regulations) and California Code of Regulations, tit. 19, section 2735.1, et seq. (known as the CalARP regulations) (collectively, the "Regulations").  WSPA also sought to enjoin enforcement of these Regulations.  *See* Dkt. 1 at 15.  Defendants denied the merits of WSPA's claims.[2]  *See generally* Dkt. 9.

The United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO ("USW") intervened as a defendant pursuant to Federal Rule of Civil Procedure 24, claiming an interest in protecting the safety of California refinery employees represented by USW by supporting the validity of the Regulations.  *See, e.g.*, Dkt. 12 at 8–11.

---

[1] The members of the California Occupational Safety and Health Standards Board and the Director of the California Governor's Office of Emergency Services were likewise named as Defendants in this action.

[2] A subsequent statute transferred state administration of the CalARP regulations from the Office of Emergency Services to the California Environmental Protection Agency, and accordingly the California Environmental Protection Agency and its secretary were substituted in as defendants in this action in place of the Office of Emergency Services and its director.  *See* Dkts. 34, 35.

3

WSPA and Defendants agreed to continue certain litigation deadlines in order to engage in settlement discussions (*see* Dkts. 26, 29, 32, 36, 38, 40), which ultimately resulted in a settlement of all claims.  The executed settlement agreement is attached hereto as Attachment A (the "Settlement Agreement").[3]  Pursuant to the Settlement Agreement, Defendants agreed to initiate rulemaking processes in order to propose amendments to certain provisions of the Regulations.  Attachment A at 2–5.  The proposed amendments will take the form of the language agreed upon between the parties. Attachment A at Exhs. A and B.  Under the California Administrative Procedures Act, these proposed amendments must undergo public notice and comment, and the ultimate outcome of the rulemaking will be subject to that public participation and rulemaking process.

In the event that this rulemaking process does not result in final regulations adopting language that the parties have agreed upon, the Settlement Agreement provides WSPA the right to re-initiate the claims in this litigation.  Attachment A at 4–5.  As a result, the Settlement Agreement provides for WSPA to seek dismissal of this lawsuit without prejudice.  *Id.* at 5.  Federal Rule of Civil Procedure 41(a)(2) also provides for dismissal without prejudice.

Defendants have consented to WSPA's request for dismissal without prejudice.  *Id.* at 5.  We understand that on September 16, 2024, Defendants provided Intervenor USW with a copy of the fully executed settlement.  Also on September 16, 2024, WSPA contacted counsel for Intervenor USW to ask if USW, which is not a party to the settlement agreement (*see* Attachment A at 1), would stipulate to dismissal of this case without prejudice, asking for a response by September 20, 2024. On September 20, counsel for USW responded that USW would not so stipulate.  USW is not the subject of any of WSPA's claims in this action (*see* Dkt. 1), nor has it asserted any cross-claims, so it has no continuing interest in the suit once WSPA's claims are dismissed.  And the only interests that USW has asserted as an intervenor in this action, which relate to ensuring the continued participation of workers in refinery safety processes and procedures (*see* Dkt. 12 at 8–11), are already fully

---

[3] The Settlement Agreement addresses both this action, and a separate action filed in California state court, in which WSPA challenged the Regulations under relevant state laws.  Portions of the settlement agreement addressing the state court action and claims alleged therein are not relevant here; WSPA has separately sought dismissal of that action, pursuant to the Settlement Agreement.

4

protected by the upcoming rulemaking processes.  USW maintains the right to submit comments on the proposed amendments to the Regulations and advocate for any changes it deems necessary for worker protection.

Accordingly, WSPA's request for a court order dismissing this action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), should be granted.


DATED:  September 23, 2024                    GIBSON, DUNN & CRUTCHER LLP


                                              By:___*/s/ Peter S. Modlin*_____
                                                    Peter S. Modlin
                                                    Attorneys for Plaintiff
                                                    WESTERN STATES PETROLEUM
                                                    ASSOCIATION

1

## CERTIFICATE OF SERVICE

2

3

4

I hereby certify that on September 23, 2024, I electronically filed the above document, and attachment which follows, with the Clerk of Court using CM/ECF, which will send electronic notifications of such filing to all registered counsel.

5

By:                                                   */s/ Peter S. Modlin*

6                                                        Peter S. Modlin

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

# ATTACHMENT A

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and among the Parties identified below for the purpose of finally resolving the following two pending actions, referred to hereinafter jointly as "The Litigation":

*Western States Petroleum Association v. California Occupational Safety and Health Standards Board, et al.* (Sacramento Superior Court, Case No. 34-2019-00260210) ("State Case")

*Western States Petroleum Association v. California Occupational Safety and Health Standards Board, et al.* (E.D. Cal., Case No. 2:19-cv-1270) ("Federal Case")

## PARTIES

This Settlement Agreement and release of claims ("Agreement") is made and entered into by the following parties:

- The Western States Petroleum Association ("WSPA" or "Plaintiff");
- The California Occupational Safety and Health Standards Board (OSHSB) and its current members Joseph M. Alioto, Jr., David Thomas, Chris Laszcz-Davis, Kate Crawford, David Harrison, and Nola J. Kennedy, in their official capacities (collectively, "the OSHSB");
- The California Department of Industrial Relations, through its Division of Occupational Safety and Health ("Cal/OSHA"); and
- The California Environmental Protection Agency and its Secretary Yana Garcia, in her official capacity (collectively, "CalEPA").

The OSHSB, Cal/OSHA, and CalEPA are collectively referred to as the "Defendants."  Plaintiff and Defendants are collectively referred to as the "Parties."[1]

## RECITALS

1.     The Litigation resolved by this Agreement consists of two actions filed by WSPA challenging certain provisions within California regulations that apply to petroleum refineries.

2.     The State Case lawsuit, filed on July 9, 2019, in which OSHSB, Cal/OSHA, and CalEPA are Defendants, asserts that certain provisions in the California Process Safety Management ("CalPSM") regulations, title 8 of the California Code of Regulations, section 5189.1, and the California Accidental Release Program ("CalARP") regulations, title 19 of the

---

[1] The Litigation as filed named the California Office of Emergency Services (CalOES) as a defendant, and did not name CalEPA.  During the pendency of the Litigation, jurisdiction over the regulations at issue was transferred by newly-enacted statute from CalOES to CalEPA. Accordingly, CalEPA has participated as party defendant, even though not formally named.  The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, which is an Intervenor-Defendant in the State Case and the Federal Case, is not a party to this Agreement.

California Code of Regulations, section 5050.1, et seq., do not meet requirements under the California Administrative Procedure Act.  This lawsuit had been stayed through August 1, 2024.

3.      The Federal Case lawsuit, filed on July 9, 2019, asserts that certain provisions in the CalPSM and CalARP regulations addressing employee representatives at petroleum refineries violate the Supremacy Clause of the United States Constitution and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*  This lawsuit is not stayed.  The court has ordered the parties to file dispositional documents or a joint status report regarding the status of settlement by no later than September 9, 2024.

4.      The Parties have agreed to completely resolve the Litigation and the disputes underlying both actions by entering into this Agreement.

## <u>AGREEMENT</u>

Accordingly, in consideration of the mutual promises contained herein, the Parties agree as follows:

1.      <u>**Cal/OSHA and PSM Regulations:**</u>  Cal/OSHA agrees to propose and to support amendments to the PSM regulations, as specified in Exhibit A hereto ("the PSM Amendments"), and according to the process as set forth below.

    **a.**  Subject to sub-paragraph i., below, Cal/OSHA will propose the PSM Amendments to the specific regulatory sections and provisions, and in the form of the exact text, set forth in Exhibit A hereto.

    **b.**  Cal/OSHA will draft and prepare all documents necessary to submit a rule-making package for the PSM Amendments to OSHSB and to the Office of Administrative Law (OAL) according to the usual rule-making process required by law for all occupational safety and health regulations.  The required initial set of documents will include:  (1) the text of the proposed PSM Amendments in the form required by the Office of Administrative Law; (2) the Notice of Proposed Action; (3) the Initial Statement of Reasons; and (4) the Economic and Fiscal Impact Statement (the 399 form) (together, the "Initial Rule-Making Package").

    **c.**  Cal/OSHA will submit the Initial Rule-Making Package to OSHSB within 270 days of the Effective Date of this Agreement.  The Parties acknowledge that any rule-making changes proposed by Cal/OSHA are subject to approval by OSHSB under applicable law.

    **d.**  Prior to submission of the PSM Amendments to OSHSB, Cal/OSHA will convene and hold at least one Advisory Committee Meeting concerning the proposed PSM Amendments.  Cal/OSHA agrees to support the PSM Amendments, and to advocate for their approval and adoption in the exact form as proposed, in the

Advisory Committee Meeting process.  At the time Cal/OSHA submits the Initial Rule-Making Package to OSHSB, Cal/OSHA will also submit to OSHSB any and all comments it has received on the PSM Amendments, including those from the Advisory Committee meeting(s).

**e.**   When the OSHSB approves the Initial Rule-Making Package as conforming with Office of Administrative Law requirements, pursuant to paragraph 2.a., below, OSHSB will submit to the Office of Administrative Law the Notice of Proposed Action for publication in the California Regulatory Notice Register to proceed with formal rule-making for the PSM Amendments.

**f.**   Once the Notice of Proposed Action has been published, Cal/OSHA, in collaboration with OSHSB, will promptly, according to OAL required timelines, facilitate and accomplish the public notice and comment period and process, required for the PSM Amendments.  Such notice and comment period will include at least one public hearing.

**g.**   Following the notice and comment period, Cal/OSHA will prepare the "Final Rule-Making Package," which will include the final text, the final statement of reasons, an amended form 399 if necessary, and an updated informative digest. The Final Rule-Making Package will be submitted to OSHSB for review and approval.

**h.**   Subject to sub-paragraph i., below, Cal/OSHA will, in submitting the Initial Rule-Making package to OSHSB, propose the PSM Amendments in the exact form and text as set forth in Exhibit A hereto.  Thereafter, Cal/OSHA will proceed with the rule-making process expeditiously and in good faith according to the usual process and procedures required by the Administrative Procedures Act. Notwithstanding this Agreement, all Parties understand, agree, and expressly acknowledge that the OSHSB must vote on the Final Rule-Making Package and Cal/OSHA is unable to guarantee that OSHSB and the Office of Administrative Law will ultimately approve and promulgate the PSM Amendments exactly as initially proposed.

**i.**   If, during the Advisory Committee Meeting(s) process referenced above in subparagraph d., and prior to the submission of the Initial Rule-Making Package to OSHSB, Cal/OSHA and WSPA mutually agree, whether in response to comments made or for other reasons, to modify the text of the proposed PSM Amendments set forth in Exhibit A hereto, Cal/OSHA and WSPA shall enter into an Addendum to this Agreement to modify Exhibit A, and thereafter the modified text of Exhibit A shall apply for all purposes of this Agreement.

2.    **<u>OSHSB and PSM Regulations:</u>**

    **a.**  OSHSB agrees that after the Initial Rule-Making Package is submitted by Cal/OSHA to the OSHSB, pursuant to paragraphs 1.a.-d., above, OSHSB will review the Initial Rule-Making Package for compliance with Office of Administrative Law requirements promptly, and will make a decision as to whether to submit a Notice of Proposed Action for publication in the California Regulatory Notice Register to proceed with formal rule-making for the PSM Amendments within 180 days of receipt of the Initial Rule-Making Package. If OSHSB determines that changes or edits are necessary so as to conform the Initial Rule-Making Package with Office of Administrative Law requirements, and such that the decision to submit the Notice of Proposed Action cannot be made within 180 days, OSHSB will so notify Cal/OSHA promptly, and in any event, shall make the decision to submit the Notice of Proposed Action on a date no later than is required to complete the rule-making process for the PSM Amendments within three years of the Effective Date of this Agreement. Such Notice of Proposed Action shall include the language specified in Exhibit A.

    **b.**  After the Final Rule-Making Package is submitted to OSHSB, pursuant to paragraphs 1.g -h, above, OSHSB agrees to hold a vote on the Final Rule-Making Package promptly, and in any event, on a date no later than is required to complete the rule-making process within one year of the date of publication of the Notice of Proposed Action in the California Regulatory Notice Register, and within three years of the Effective Date of this Agreement, whichever is earlier.

3.    **<u>CalEPA and ARP Regulations:</u>**  Within 180 calendar days of the Effective Date of this Agreement, CalEPA agrees to initiate a rulemaking and publish a notice of proposed action in the California Regulatory Notice Register proposing the amendment of certain provisions of the CalARP regulations to conform with the regulatory language contained in Exhibit B ("the ARP Amendments").

4.    **<u>Agreements Re The Rule-Making Process:</u>**

    **a. Cal/OSHA, WSPA and the PSM Amendments:**  Notwithstanding the agreements made herein with respect to the PSM Amendments, all Parties understand, acknowledge, and expressly agree that Cal/OSHA cannot control the outcome of the formal rule-making process for the PSM Amendments that is required by law for all occupational safety and health regulations in the California Code of Regulations. Cal/OSHA agrees to propose the PSM Amendments in the exact form and text as agreed to herein to the OSHSB, and to support the amendments as proposed at the outset of proceedings before the OSHSB. Cal/OSHA cannot guarantee or ensure, however, that the regulations will ultimately be approved by OSHSB and the OAL with exactly the text that is initially proposed. Cal/OSHA agrees to meet and confer with WSPA in good faith as necessary and appropriate during the rule-making and public notice and comment period to determine whether any changes to the text of the PSM Amendments as

proposed should be mutually agreed to and recommended in order to facilitate the process and adoption of final text that is acceptable to all Parties.

      **b. CalEPA, WSPA, and the ARP Amendments:** Notwithstanding the agreements made herein with respect to the ARP Amendments, all Parties understand, acknowledge, and expressly agree that CalEPA cannot predetermine the final outcome of the formal rule-making process for the ARP Amendments that is required by law for any and all amendments to the California Code of Regulations. CalEPA agrees to propose the ARP Amendments in the exact form and text as agreed to herein (Exhibit B) in an initial rulemaking package. CalEPA cannot guarantee or ensure, however, that the regulations will ultimately be approved by the OAL with exactly the text that is initially proposed.

      5.    **Dismissal of the Federal Case**.  Within 14 calendar days of the execution of this Agreement, Plaintiff shall file a motion for voluntary dismissal without prejudice of the Federal Case under Federal Rule of Civil Procedure 41(a).  In this motion, Plaintiff shall note that Defendants consent to this request.

      6.    **Dismissal of the State Case.**  Within 14 calendar days of the execution of this Agreement, Plaintiff shall file a written request with the Sacramento Superior Court clerk for voluntary dismissal without prejudice of the State Case under California Code of Civil Procedure section 581(b)(1), and shall provide Defendants with a copy of the filed request.

      7.    **Agreements Re Releases and Future Litigation:**

      a.  In the event that the rule-making processes for the PSM Amendments and ARP Amendments ultimately result in regulations that are identical to the text agreed to by the Parties in Exhibits A and B, respectively, or as otherwise mutually and expressly agreed to by the Parties during the respective rule-making processes, WSPA, as well as its members, administrators, successors, assigns, agents, servants, corporations, officers, directors, partnerships, partners, associates, representatives, principals, joint ventures, trustees, subsidiaries, shareholders, past and present, or anyone else claiming by and through it, waive and release any and all challenges to the specific regulatory provisions amended and adopted in the PSM Amendments and ARP Amendments, and agree not to file any action challenging such provisions, in any forum, while the text of the provisions remains in the same form as agreed to in this Agreement.

      b.  In the event that the rule-making processes are not completed within three years from the Effective Date of this Agreement, or do not result in any changes to the PSM Regulations or the ARP Regulations, or ultimately result in final regulatory text that is neither identical to the text in Exhibits A and B, nor as otherwise mutually and expressly agreed to by the Parties during the rule-making process, WSPA reserves, retains, and shall have the right to challenge any existing or

amended regulations through new litigation, notwithstanding the Litigation and this Agreement, subject to any and all available defenses that Cal/OSHA, CalEPA, OSHSB, or any other person or party may have under applicable provisions of law, subject to paragraph 8, below.

8.      **Tolling of Statutes of Limitations and Repose.**  In the event that WSPA exercises its right to challenge any existing or amended regulations pursuant to paragraph 7(b) of this Agreement, the following periods of time shall not be counted in determining the time in which WSPA shall be required by any applicable statute of limitations or repose to re-assert any of the same claims it has asserted in the current Litigation and shall not be included in the basis for any other legal or equitable defense:

        (a)      The time period extending from July 9, 2019 to the Effective Date of this Agreement ("First Tolling Period").

        (b)      The time period extending from the Effective Date of this Agreement to a date four years after the Effective Date of this Agreement.

The Parties do not intend this Agreement to revive any claim that was already barred by any legal or equitable defense as of the date of this Agreement.

9.      **Effective Date of the Agreement.** The Effective Date of this Agreement shall be the last date of all Parties' respective signatures.

10.     **Enforcement of the Agreement.**  The provisions of this Agreement shall be enforceable by motion pursuant to Code of Civil Procedure section 664.6.  The Parties agree that the Court will have jurisdiction for that purpose.  Notwithstanding this provision, at least 60 days prior to the filing of any motion by any Party contending that another Party has failed to comply with the terms of this Agreement, the Party so contending must notify the other Parties, in writing, and engage in a good faith and substantial meet and confer process to address the alleged failure of performance.  Any Party alleged to have failed to perform the obligations of this Agreement shall be given at least 30 days to correct such alleged nonperformance before any Motion to Enforce is filed.

11.     **Promises Not Contained Herein.**  The Parties hereby acknowledge that they have not executed this Agreement in reliance upon any promise, representation or warranty not contained herein, and that this Agreement contains the entire agreement between the Parties related to the underlying litigation.

12.     **Modification in Writing Only.**  This Agreement may be modified or amended only in writing, signed by the Parties.

13.     **Waiver.**  No provisions of this Agreement may be waived unless in writing and signed by the Parties whose rights are thereby waived.  Waiver of any one provision of this Agreement shall not be deemed to be a waiver of any other provision herein.

14. **Divisible Provisions.**  The provisions of this Agreement are divisible.  If any provision of this Agreement shall be deemed invalid or unenforceable, that finding shall not affect the applicability, validity and/or enforceability of any other provision of this Agreement. Rather, if possible, such invalid or unenforceable provision shall be amended to the extent necessary to render it valid and enforceable to the fullest extent possible.

15. **Voluntary Execution.**  The Parties hereby acknowledge and represent that they have fully and carefully read this Agreement and that each is executing this Agreement as a free and voluntary act.  The Parties each further represent that they have had an opportunity to consult with an attorney of their choosing and that they have been fully advised by the attorney with respect to their rights and obligations and with respect to the execution of this Agreement.

16. **Fees and Costs.**  The Parties hereby acknowledge and agree that each Party shall bear their own respective attorneys' fees and costs incurred as a result of the State Case, the Federal Case, this Agreement, and the matters giving rise to them.

17. **Not an Admission.**  This Agreement is a compromise of the claims between the Parties arising out of, among other things, the Federal Case and the State Case and/or any other matters or disputes as provided for herein, which are being settled to avoid the cost, expense and disruption of litigation related thereto. This Agreement is the product of arms-length negotiations, and is not to be construed as an admission of any kind by any Party. This Agreement also does not constitute a relinquishment of any right on the part of the OSHSB.

18. **Assignment.**  The Parties hereby represent and warrant that they have not previously assigned, reassigned, or transferred—or purported to assign, reassign, or transfer— any claim, demand, action, cause of action, or other right released or discharged herein.  The Parties, and each of them, hereby agree to indemnify one another, and to hold the others harmless, of, from, and against any and all rights, claims, demands, damages, debts, liabilities, obligations, accounts, reckonings, costs (including, but not limited to, the payment of reasonable attorneys' fees, expert fees and costs), expenses, liens, actions, or causes of action, related to or otherwise attributable to, any such actual or purported assignment, reassignment or transfer, whether or not litigation is commenced.

19. **Execution of Necessary Documents.**  The Parties hereby represent and warrant that they will do all acts and execute and deliver all documents reasonably necessary to effect all provisions of this Agreement.

20. **Laws and Jurisdiction**.  This Agreement shall be subject to, governed by and enforced pursuant to the laws of the State of California without regard to conflicts of laws.  If any of the Parties to this Agreement bring a motion to enforce or interpret this Agreement, the motion shall be filed in the Superior Court for the County of Sacramento, California.

21. **Legal Capacity.**  The Parties, and each of them, hereby represent and warrant that they have the right, power, legal capacity and authority to enter into and satisfy the terms of this

Agreement, and that no further approval or consent of any person or entity is necessary to enter into and satisfy the terms of this Agreement.

22. **Authorization to Execute.** The Parties hereby represent and warrant that the undersigned individual representatives of each are fully authorized to execute this Agreement and to give the releases and other promises contained herein.

23. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall constitute an original hereof, and all of which taken together shall constitute one and the same agreement. Further, this Agreement may be executed by facsimile or by portable document format (.pdf) signature, such that execution of this Agreement by facsimile or by portable document format (.pdf) signature shall be deemed effective for all purposes as though this Agreement was executed as a "blue ink" original.

24. **Equally Drafted.** This Agreement shall be construed without regard to its drafter, and shall be construed as though the Parties participated equally from its inception in the drafting of this Agreement.

## **SIGNATURES**

FOR WSPA:


Catherine H. Reheis-Boyd                                  Dated: September 13, 2024
President & CEO
Western States Petroleum Association


FOR CAL/OSHA:


_____                             Dated:
Debra Lee, Chief
California Department of Industrial Relations
Division of Occupational Safety and Health (Cal/OSHA)

Agreement, and that no further approval or consent of any person or entity is necessary to enter into and satisfy the terms of this Agreement.

**22.** **Authorization to Execute.** The Parties hereby represent and warrant that the undersigned individual representatives of each are fully authorized to execute this Agreement and to give the releases and other promises contained herein.

**23.** **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall constitute an original hereof, and all of which taken together shall constitute one and the same agreement. Further, this Agreement may be executed by facsimile or by portable document format (.pdf) signature, such that execution of this Agreement by facsimile or by portable document format (.pdf) signature shall be deemed effective for all purposes as though this Agreement was executed as a "blue ink" original.

**24.** **Equally Drafted.** This Agreement shall be construed without regard to its drafter, and shall be construed as though the Parties participated equally from its inception in the drafting of this Agreement.

**SIGNATURES**

FOR WSPA:

_____          Dated:

Catherine H. Reheis-Boyd
President & CEO
Western States Petroleum Association

FOR CAL/OSHA:

_____          Dated:  9/10/2024

Debra Lee, Chief
California Department of Industrial Relations
Division of Occupational Safety and Health (Cal/OSHA)

FOR CALEPA:

_____          Dated:  9/10/2024
Yana Garcia
Secretary for Environmental Protection

FOR OSHSB:

_____          Dated:
Millicent Barajas
Executive Officer

FOR CALEPA:

_____                          Dated:
Yana Garcia
Secretary for Environmental Protection

FOR OSHSB:

_____                          Dated:
Millicent Barajas
Executive Officer

**EXHIBIT A**

## 1. "APPLICABILITY" PROVISION

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 8 CCR 5189.1(c) | Highly Hazardous Material. A flammable liquid or flammable gas, or a toxic or reactive substance. | Highly Hazardous Material. A flammable liquid or flammable gas, or a toxic or reactive substance. *Highly hazardous material does not include any substance in quantities below the lesser of the thresholds set forth in the California Hazardous Materials Business Plan rule at California Health and Safety Code section 25507(a)(1)(A) or Tables 1, 2, and 3 in CCR, title 19, section 5130.6.* | Highly Hazardous Material. A flammable liquid or flammable gas, or a toxic or reactive substance.  Highly hazardous material does not include any substance in quantities below the lesser of the thresholds set forth in the California Hazardous Materials Business Plan rule at California Health and Safety Code section 25507(a)(1)(A) or Tables 1, 2, and 3 in CCR, title 19, section 5130.6. |

## 2. MAJOR CHANGE

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 8 CCR 5189.1(c) | Major Change. Any of the following:<br>• Introduction of a new process, new process equipment, or new highly hazardous material;<br>• Any operational change outside of established safe operating limits; or,<br>• Any alteration that introduces a new process safety hazard or worsens an existing process safety hazard. | Major Change. Any of the following:<br>• *(1)* Introduction of a new process, *(2) introduction of* new process equipment, or *(3) introduction of* new highly hazardous material;<br>• A *that results in a*ny operational change outside of established safe operating limits; or,<br>• *(4)* Any alteration that introduces a new process safety hazard or worsens an existing process safety hazard. *in a process, process equipment, or process chemistry, that results in any operational change outside of established safe operating limits. An alteration in process or process equipment does not include a replacement in kind.*<br><br>*For subsections 2, 3, and 4, an introduction of new process equipment or alteration in process or process equipment must result in an operational change outside of established safe operating limits to be considered a major change.* | Major Change. Any of the following:<br>(1) Introduction of a new process,<br>(2) introduction of new process equipment, or<br>(3) introduction of new highly hazardous material that results in any operational change outside of established safe operating limits; or,<br>(4) Any alteration in a process, process equipment, or process chemistry, that results in any operational change outside of established safe operating limits. An alteration in process or process equipment does not include a replacement in kind.<br><br>For subsections 2, 3, and 4, an introduction of new process equipment or alteration in process or process equipment must result in an operational change outside of established safe operating limits to be considered a major change. |

3.  HIERARCHY OF HAZARD CONTROL ANALYSIS

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 8 CCR 5189.1(*l*)(4)(D) | Identify, analyze, and document relevant, publically available information on inherent safety measures and safeguards. This information shall include inherent safety measures and safeguards that have been: 1. achieved in practice by the petroleum refining industry and related industrial sectors; and 2. required or recommended for the petroleum refining industry and related industrial sectors, by a federal or state agency, or local California agency, in a regulation or report; and, | Identify, analyze, and document relevant, publically available information on inherent safety measures and safeguards. ~~This information shall include inherent safety measures and safeguards that have been: 1. achieved in practice by the petroleum refining industry and related industrial sectors; and 2. required or recommended for the petroleum refining industry and related industrial sectors, by a federal or state agency, or local California agency, in a regulation or report~~ *Note: This information may include inherent safety measures and safeguards that have been: 1. achieved in practice by the petroleum refining industry and related industrial sectors; and 2. required or recommended for the petroleum refining industry and related industrial sectors, by a federal or state agency, or local California agency, in a regulation or report.* | Identify, analyze, and document relevant, publicly available information on inherent safety measures and safeguards.<br><br>Note: This information may include inherent safety measures and safeguards that have been: 1. achieved in practice by the petroleum refining industry and related industrial sectors; and 2. required or recommended for the petroleum refining industry and related industrial sectors, by a federal or state agency, or local California agency, in a regulation or report. |
| 8 CCR 5189.1(*l*)(4)(E) | For each process safety hazard identified in subsection (l)(4), develop written recommendations in the following sequence and priority order:<br>1. Eliminate hazards to the greatest extent feasible using first order inherent safety measures;<br>2. Reduce any remaining hazards to the greatest extent feasible using second order inherent safety measures;<br>3. Effectively reduce remaining risks using passive safeguards;<br>4. Effectively reduce remaining risks using active safeguards; and,<br>5. Effectively reduce remaining risks using procedural safeguards. | For each process safety hazard identified in subsection (l)(4), develop written recommendations in the following sequence and priority order. *The HCA team shall consider all process safety hazards that may be impacted by a particular safety measure or safeguard and shall select those safety measures or safeguards that, in the team's judgment, are most effective at reducing all such process safety hazards.*<br>1. Eliminate hazards to the greatest extent feasible using first order inherent safety measures;<br>2. Reduce any remaining hazards to the greatest extent feasible using second order inherent safety measures;<br>3. Effectively reduce remaining risks using passive safeguards; | For each process safety hazard identified in subsection (l)(4), develop written recommendations in the following sequence and priority order.  The HCA team shall consider all process safety hazards that may be impacted by a particular safety measure or safeguard and shall select those safety measures or safeguards that, in the team's judgment, are most effective at reducing all such process safety hazards.<br>1. Eliminate hazards to the greatest extent feasible using first order inherent safety measures;<br>2. Reduce any remaining hazards to the greatest extent feasible using second order inherent safety measures;<br>3. Effectively reduce remaining risks using passive safeguards; |

| | | 4. Effectively reduce remaining risks using active safeguards; and, <br> 5. Effectively reduce remaining risks using procedural safeguards. | 4. Effectively reduce remaining risks using active safeguards; and, <br> 5. Effectively reduce remaining risks using procedural safeguards. |
|---|---|---|---|
| 8 CCR 5189.1(*l*)(5) | The HCA team shall complete an HCA report within 90 calendar days of developing the recommendations. The report shall include: <br> (A) A description of the composition, experience and expertise of the team; <br> (B) A description of the HCA methodology used by the team; <br> (C) A description of each process safety hazard analyzed by the team, pursuant to subsection (l)(4)(B); <br> (D) A description of the inherent safety measures and safeguards analyzed by the team, pursuant to subsection (l)(4)(C); and, <br> (E) The rationale for the inherent safety measures and safeguards recommended by the team for each process safety hazard, pursuant to subsection (l)(4)(E). | (5) The HCA team shall complete an HCA report within 90 calendar days of developing the recommendations. The report shall include: <br> (A) A description of the composition, experience and expertise of the team; <br> (B) A description of the HCA methodology used by the team; <br> (C) A description of each process safety hazard analyzed by the team, pursuant to subsection (l)(4)(B); <br> (D) A description of the inherent safety measures and safeguards analyzed by the team, pursuant to subsection (l)(4)(C); ~~and~~ <br> (E) The rationale for the inherent safety measures and safeguards recommended by the team for each process safety hazard, pursuant to subsection (l)(4)(E)*; and* <br> *(F) The rationale for not recommending any inherent safety measures and safeguards analyzed by the team and identified pursuant to subsection (l)(4)(D).* | The HCA team shall complete an HCA report within 90 calendar days of developing the recommendations. The report shall include: <br> (A) A description of the composition, experience and expertise of the team; <br> (B) A description of the HCA methodology used by the team; <br> (C) A description of each process safety hazard analyzed by the team, pursuant to subsection (l)(4)(B); <br> (D) A description of the inherent safety measures and safeguards analyzed by the team, pursuant to subsection (l)(4)(C); <br> (E) The rationale for the inherent safety measures and safeguards recommended by the team for each process safety hazard, pursuant to subsection (l)(4)(E); and <br> (F) The rationale for not recommending any inherent safety measures and safeguards analyzed by the team and identified pursuant to subsection (l)(4)(D). |

## 4. EMPLOYEE PARTICIPATION

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 8 CCR 5189.1(c) | Employee Representative. A union representative, where a union exists, or an employee-designated representative in the absence of a union that is on-site and qualified for the task. The term is to be construed broadly, and may include the local union, the international union, or a refinery or contract employee designated by these parties, such as the safety and health committee representative at the site. | Employee Representative. *An employee, who is on-site and qualified for the task, selected by a union, or by the employees in the absence of a union.* ~~A union representative, where a union exists, or an employee-designated representative in the absence of a union that is on-site and qualified for the task.~~ The term *'employee representative'* is to be construed broadly, and may include ~~the local union, the international union, or a refinery or contract~~ *an* employee ~~designated by these parties~~ *at the site* such as the safety and health | Employee Representative. An employee, who is on-site and qualified for the task, selected by a union, or by the employees in the absence of a union. The term 'employee representative' is to be construed broadly, and may include an employee at the site such as the safety and health committee representative.  Nothing in this subsection shall be construed to supersede an employee representative selection process in a collective bargaining agreement. |

| | | committee representative ~~at the site~~. *Nothing in this subsection shall be construed to supersede an employee representative selection process in a collective bargaining agreement.* | |
|---|---|---|---|
| 8 CCR 5189.1(q)(1) | In consultation with employees and employee representatives, the employer shall develop, implement and maintain a written plan to effectively provide for employee participation in all PSM elements, pursuant to this section. The plan shall include provisions that provide for the following: (A) Effective participation by affected operating and maintenance employees and employee representatives, throughout all phases, in performing PHAs, DMRs, HCAs, MOCs, Management of Organizational Change assessments (MOOCs), Process Safety Culture Assessments (PSCAs), Incident Investigations, SPAs and PSSRs; (B) Effective participation by affected operating and maintenance employees and employee representatives, throughout all phases, in the development, training, implementation and maintenance of the PSM elements required by this section; and, (C) Access by employees and employee representatives to all documents or information developed or collected by the employer pursuant to this section, including information that might be subject to protection as a trade secret. | Add subsection (q)(1)(D): *With respect to employee participation in the PSM activities required by this section, an employer will allow for "effective participation" by employees in such activities if it provides advance notice of each such PSM activity and considers input provided by individuals participating in such PSM activities, including the employee representative, as specified in subsection (x). If the requisite advance notice is provided as specified above, an employer shall not be required to delay any PSM activity due to the failure by a union, or employees in the absence of a union, to select an employee representative, or the failure of a selected employee representative to participate in the noticed PSM activity. Nothing in this subsection shall be construed to require an employer to accept recommendations or findings of employee representatives.* | With respect to employee participation in the PSM activities required by this section, an employer will allow for "effective participation" by employees in such activities if it provides advance notice of each such PSM activity and considers input provided by individuals participating in such PSM activities, including the employee representative, as specified in subsection (x). If the requisite advance notice is provided as specified above, an employer shall not be required to delay any PSM activity due to the failure by a union, or employees in the absence of a union, to select an employee representative, or the failure of a selected employee representative to participate in the noticed PSM activity. Nothing in this subsection shall be construed to require an employer to accept recommendations or findings of employee representatives. |
| 8 CCR 5189.1(q)(2) | Authorized collective bargaining agents may select (A) employee(s) to participate in overall PSM program development and implementation planning and (B) employee(s) to participate in PSM teams and other activities, pursuant to this section. | Replace with: *The written employee-participation plan will determine how employees are selected to participate in overall PSM program development and implementation planning and to participate in PSM teams and other activities, pursuant to this section. Any such employees shall be on-site and qualified for the task for which they are selected and shall be subject to all provisions of 8 CCR* | The written employee-participation plan will determine how employees are selected to participate in overall PSM program development and implementation planning and to participate in PSM teams and other activities, pursuant to this section. Any such employees shall be on-site and qualified for the task for which they are selected and shall be subject to all provisions of 8 CCR |

| | | *5189.1(q)(1) applicable to employee representatives.* | 5189.1(q)(1) applicable to employee representatives. |

# **EXHIBIT B**

1. APPLICABILITY

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 19 CCR 5050.3(y) | "Highly hazardous material" means a flammable liquid, flammable gas, toxic or reactive substance as those terms are defined: (1) flammable gas, as defined in California Code of Regulation (CCR) Title 8, § 5194, Appendix B, (2) flammable liquid, as defined in CCR Title 8, § 5194, Appendix B, (3) toxic substances as acute toxicity is defined in CCR Title 8, § 5194, Appendix A, and (4) reactive substance as self-reactive chemical, as defined in CCR Title 8, § 5194, Appendix B. Highly hazardous material includes all regulated substances listed in Tables 1, 2, and 3 of this Chapter. | "Highly hazardous material" means a flammable liquid, flammable gas, toxic or reactive substance as those terms are defined: (1) flammable gas, as defined in California Code of Regulation (CCR) Title 8, § 5194, Appendix B, (2) flammable liquid, as defined in CCR Title 8, § 5194, Appendix B, (3) toxic substances as acute toxicity is defined in CCR Title 8, § 5194, Appendix A, and (4) reactive substance as self-reactive chemical, as defined in CCR Title 8, § 5194, Appendix B. Highly hazardous material includes all regulated substances listed in Tables 1, 2, and 3 of this Chapter. *Highly hazardous material does not include any substance in quantities below the lesser of the thresholds set forth in the California Hazardous Materials Business Plan rule at California Health and Safety Code § 25507(a)(1)(A) or in Tables 1, 2, and 3 of this Chapter.* | "Highly hazardous material" means a flammable liquid, flammable gas, toxic or reactive substance as those terms are defined: (1) flammable gas, as defined in California Code of Regulation (CCR) Title 8, § 5194, Appendix B, (2) flammable liquid, as defined in CCR Title 8, § 5194, Appendix B, (3) toxic substances as acute toxicity is defined in CCR Title 8, § 5194, Appendix A, and (4) reactive substance as self-reactive chemical, as defined in CCR Title 8, § 5194, Appendix B. Highly hazardous material includes all regulated substances listed in Tables 1, 2, and 3 of this Chapter.  Highly hazardous material does not include any substance in quantities below the lesser of the thresholds set forth in the California Hazardous Materials Business Plan rule at California Health and Safety Code § 25507(a)(1)(A) or in Tables 1, 2, and 3 of this Chapter. |
| 19 CCR 5050.3(yy) | "Process" for purposes of Article 7, means petroleum refining activities involving a highly hazardous material, including use, storage, manufacturing, handling, piping, or on-site movement. For the purposes of this definition, any group of vessels that are interconnected, or separate vessels that are located such that an incident in one vessel could affect any other vessel, shall be considered a single process. Utilities and safety related devices shall be considered part of the process if, in the | "Process" for purposes of Article 7, means petroleum refining activities involving a ~~highly hazardous material~~ *regulated substance*, including use, storage, manufacturing, handling, piping, or on-site movement. For the purposes of this definition, any group of vessels that are interconnected, or separate vessels that are located such that an incident in one vessel could affect any other vessel, shall be considered a single process. *Any petroleum refining activities involving a* | "Process" for purposes of Article 7, means petroleum refining activities involving a regulated substance, including use, storage, manufacturing, handling, piping, or on-site movement. For the purposes of this definition, any group of vessels that are interconnected, or separate vessels that are located such that an incident in one vessel could affect any other vessel, shall be considered a single process. Any petroleum refining activities involving a highly hazardous material shall be |

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| | event of an unmitigated failure or malfunction, they could potentially contribute to a major incident. This definition includes processes under partial or unplanned shutdowns. Ancillary administrative and support functions, including office buildings, laboratories, warehouses, maintenance shops, and change rooms are not considered processes under this definition. | *highly hazardous material shall be considered part of a process.* Utilities and safety related devices shall be considered part of the process if, in the event of an unmitigated failure or malfunction, they could potentially contribute to a major incident. This definition includes processes under partial or unplanned shutdowns. Ancillary administrative and support functions, including office buildings, laboratories, warehouses, maintenance shops, and change rooms are not considered processes under this definition. | considered part of a process. Utilities and safety related devices shall be considered part of the process if, in the event of an unmitigated failure or malfunction, they could potentially contribute to a major incident. This definition includes processes under partial or unplanned shutdowns. Ancillary administrative and support functions, including office buildings, laboratories, warehouses, maintenance shops, and change rooms are not considered processes under this definition. |
| 19 CCR 5110.1 | (a) This Article shall apply to processes within petroleum refineries. (b) All processes of the petroleum refinery are covered except process plant laboratories or laboratories that are under the supervision of a technically qualified individual as defined in section 720.3(ee) of 40 CFR. This exemption does not apply to specialty chemical production; manufacture, processing or use of substances in pilot plant scale operations; and activities conducted outside the laboratory. | (a) This Article shall apply to processes within petroleum refineries. (b) ~~All processes of the petroleum refinery are covered except~~ *This article shall not apply to* process~~es at~~ plant laboratories or laboratories that are under the supervision of a technically qualified individual as defined in section 720.3(ee) of 40 CFR. This exemption does not apply to specialty chemical production; manufacture, processing or use of substances in pilot plant scale operations; and activities conducted outside the laboratory. | (a) This Article shall apply to processes within petroleum refineries. (b) This Article shall not apply to processes at plant laboratories or laboratories that are under the supervision of a technically qualified individual as defined in section 720.3(ee) of 40 CFR. This exemption does not apply to specialty chemical production; manufacture, processing or use of substances in pilot plant scale operations; and activities conducted outside the laboratory. |

## 2. MAJOR CHANGE

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 19 CCR 5050.3(hh) | "Major change" means: (1) introduction of a new process, or (2) new process equipment, or new regulated substance that results in any operational change outside of established safe operating | "Major change" means: (1) introduction of a new process, or (2) *Introduction of* new process equipment, or *(3) Introduction of a* new regulated substance that results in any operational | "Major change" means: (1) introduction of a new process, or (2) Introduction of new process equipment, or (3) Introduction of a new regulated substance that results in any operational |

| | | | |
|---|---|---|---|
| | limits; or (3) any alteration in a process, process equipment, or process chemistry that introduces a new hazard or increases an existing hazard. | change outside of established safe operating limits;, or ((3)4) e2ny alteration in a process, process equipment, or process chemistry that introduces a new hazard or increases an existing hazard, *results in any operational change outside of established safe operating limits. An alteration in process or process equipment does not include a replacement in kind.*<br><br>*For the purposes of Article 7 (program 4), an introduction of new process equipment or alteration in process or process equipment must result in an operational change outside of established safe operating limits to be considered a major change.* | change outside of established safe operating limits, or (4) Any alteration in a process, process equipment, or process chemistry that results in any operational change outside of established safe operating limits. An alteration in process or process equipment does not include a replacement in kind.<br><br>For the purposes of Article 7 (program 4), an introduction of new process equipment or alteration in process or process equipment must result in an operational change outside of established safe operating limits to be considered a major change. |

## 3. HIERARCHY OF HAZARD CONTROL ANALYSIS

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 19 CCR 5110.16(e)(3) | Identify, analyze, and document all inherent safety measures and safeguards (or where appropriate, combinations of measures and safeguards) in an iterative manner to reduce each hazard to the greatest extent feasible. Identify, analyze, and document relevant, publicly available information on inherent safety measures and safeguards. This information shall include inherent safety measures and safeguards that have been: (A) achieved in practice by for the petroleum refining industry and related industrial sectors; or, (B) required or recommended for the petroleum refining industry, and related | Identify, analyze, and document all inherent safety measures and safeguards (or where appropriate, combinations of measures and safeguards) in an iterative manner to reduce each hazard to the greatest extent feasible. Identify, analyze, and document relevant, publicly available information on inherent safety measures and safeguards. This information shall include inherent safety measures and safeguards that have been: (A) achieved in practice by for the petroleum refining industry and related industrial sectors; or, (B) required or recommended for the petroleum refining industry, and related | Identify, analyze, and document all inherent safety measures and safeguards (or where appropriate, combinations of measures and safeguards) in an iterative manner to reduce each hazard to the greatest extent feasible. Identify, analyze, and document relevant, publicly available information on inherent safety measures and safeguards. |

| | | |
|---|---|---|
| | industrial sectors, by a federal or state agency, or local California agency, in a regulation or report. | industrial sectors, by a federal or state agency, or local California agency, in a regulation or report. | |
| 19 CCR 5110.16(f) | For each process safety hazard identified using the analysis required by subdivision (e), the team shall develop written recommendations to eliminate hazards to the greatest extent feasible using first order inherent safety measures. The team shall develop written recommendations to reduce any remaining hazards to the greatest extent feasible using second order inherent safety measures. If necessary, the team shall also develop written recommendations to address any remaining risks in the following sequence and priority order:<br>(1) Effectively reduce remaining risks using passive safeguards;<br>(2) Effectively reduce remaining risks using active safeguards;<br>(3) Effectively reduce remaining risks using procedural safeguards. | For each process safety hazard identified using the analysis required by subdivision (e), the team shall develop written recommendations *in the following sequence and priority order:* to eliminate hazards to the greatest extent feasible using first order inherent safety measures. The team shall develop written recommendations to reduce any remaining hazards to the greatest extent feasible using second order inherent safety measures. If necessary, the team shall also develop written recommendations to address any remaining risks in the following sequence and priority order: *The HCA team shall consider all process safety hazards that may be impacted by a particular safety measure or safeguard and shall select those safety measures or safeguards that, in the team's judgment, are most effective at reducing all such process safety hazards.*<br><br>*(1) Eliminate hazards to the greatest extent feasible using first order inherent safety measures;*<br>*(2) Reduce any remaining hazards to the greatest extent feasible using second order inherent safety measures;*<br>(*1*3) Effectively reduce remaining risks using passive safeguards;<br>(*2*4) Effectively reduce remaining risks using active safeguards; *and* | For each process safety hazard identified using the analysis required by subdivision (e), the team shall develop written recommendations in the following sequence and priority order. The HCA team shall consider all process safety hazards that may be impacted by a particular safety measure or safeguard and shall select those safety measures or safeguards that, in the team's judgment, are most effective at reducing all such process safety hazards.<br><br>(1) Eliminate hazards to the greatest extent feasible using first order inherent safety measures;<br>(2) Reduce any remaining hazards to the greatest extent feasible using second order inherent safety measures;<br>(3) Effectively reduce remaining risks using passive safeguards;<br>(4) Effectively reduce remaining risks using active safeguards; and<br>(5) Effectively reduce remaining risks using procedural safeguards. |

| | | (55) Effectively reduce remaining risks using procedural safeguards. | |
|---|---|---|---|
| 19 CCR 5110.16(g) | The HCA team shall complete an HCA report within 90 calendar days following development of the recommendations. The report shall include:<br>(1) A description of the composition, experience, and expertise of the members of the team that performed the HCA;<br>(2) A description of the methodology used by the team;<br>(3) A description of each process safety hazard analyzed by the team, pursuant to subdivision (e)(2) above;<br>(4) A description of the inherent safety measure(s) and safeguards analyzed by the team, pursuant to subdivision (e)(3) above; and<br>(5) The rationale for the inherent safety measures and safeguards recommended by the team for each process safety hazard, pursuant to subsection (f). | (g) The HCA team shall complete an HCA report within 90 calendar days following development of the recommendations. The report shall include:<br>(1) A description of the composition, experience, and expertise of the members of the team that performed the HCA;<br>(2) A description of the methodology used by the team;<br>(3) A description of each process safety hazard analyzed by the team, pursuant to subdivision (e)(2) above;<br>(4) A description of the inherent safety measure(s) and safeguards analyzed by the team, pursuant to subdivision (e)(3) above; ~~and~~<br>(5) The rationale for the inherent safety measures and safeguards recommended by the team for each process safety hazard, pursuant to subsection (f)*; and*<br>*(6) The rationale for not recommending any inherent safety measures and safeguards analyzed by the team and identified pursuant to subsection (e)(3).* | The HCA team shall complete an HCA report within 90 calendar days following development of the recommendations. The report shall include:<br>(1) A description of the composition, experience, and expertise of the members of the team that performed the HCA;<br>(2) A description of the methodology used by the team;<br>(3) A description of each process safety hazard analyzed by the team, pursuant to subdivision (e)(2) above;<br>(4) A description of the inherent safety measure(s) and safeguards analyzed by the team, pursuant to subdivision (e)(3) above;<br>(5) The rationale for the inherent safety measures and safeguards recommended by the team for each process safety hazard, pursuant to subsection (f); and<br>(6) The rationale for not recommending any inherent safety measures and safeguards analyzed by the team and identified pursuant to subsection (e)(3). |

## 4. EMPLOYEE PARTICIPATION

| Provision | Current Text | Agreed Amendments | Agreed Amended Text |
|---|---|---|---|
| 19 CCR 5050.3(t) | "Employee representative" means a union representative, where a union exists, or an employee designated representative in the absence of a union that is on-site and qualified for the task. | "Employee representative" means *an employee, who is on-site and qualified for the task, selected by a union, or by the employees in the absence of a union.* ~~A union representative, where a~~ | "Employee representative" means an employee, who is on-site and qualified for the task, selected by a union, or by the employees in the absence of a union. The term 'employee |

| | | | |
|---|---|---|---|
| | The term is to be construed broadly, and may include the local union, the international union, or an individual designated by these parties, such as the safety and health committee representative at the site. | ~~union exists, or an employee-designated representative in the absence of a union that is on-site and qualified for the task.~~ The term *'employee representative '* is to be construed broadly, and may include ~~the local union, the international union, or a refinery or contract~~ *an* employee designated by these parties *at the site* such as the safety and health committee representative~~at the site~~. *Nothing in this subsection shall be construed to supersede an employee representative selection process in a collective bargaining agreement.* | representative' is to be construed broadly, and may include an employee at the site such as the safety and health committee representative. Nothing in this subsection shall be construed to supersede an employee representative selection process in a collective bargaining agreement. |
| 19 CCR 5110.13(a)(1) | In consultation with employees and employee representatives, the owner or operator shall develop, implement and maintain a written plan to effectively provide for employee participation in Accidental Release Prevention elements, as required by this Article. The plan shall include provisions that provide for the following:<br>(1) Effective participation by affected operating and maintenance employees and employee representatives, throughout all phases, in performing PHAs, DMRs, HCAs, MOCs, MOOCs, Process Safety Culture Assessments (PSCAs), Incident Investigations, SPAs, and PSSRs;<br>(2) Effective participation by affected operating and maintenance employees and employee representatives, throughout all phases of in the development, training, implementation and maintenance of the Accidental | Add subsection (a)(1)(4)<br>*(4) With respect to employee participation in Accidental Release Prevention element activities required by this Article, the owner or operator will allow for "effective participation" by employees in such activities if it provides advance notice of each such Accidental Release Prevention element activity and considers input provided by individuals participating in each such activity, including the employee representative. If the requisite advance notice is provided as specified above, owner or operator shall not be required to delay any Accidental Release Prevention element activity due to the failure by a union, or employees in the absence of a union, to select an employee representative, or the failure of a selected employee representative to participate in the noticed activity. Nothing in this subsection shall be construed to* | (4) With respect to employee participation in Accidental Release Prevention element activities required by this Article, the owner or operator will allow for "effective participation" by employees in such activities if it provides advance notice of each such Accidental Release Prevention element activity and considers input provided by individuals participating in each such activity, including the employee representative. If the requisite advance notice is provided as specified above, the owner or operator shall not be required to delay any Accidental Release Prevention element activity due to the failure by a union, or employees in the absence of a union, to select an employee representative, or the failure of a selected employee representative to participate in the noticed activity. Nothing in this subsection shall be construed to require an owner or operator to accept |

| | Release Prevention elements required by this Article.<br>(3) Access by employees and employee representatives to all documents or information developed or collected by the owner or operator pursuant to this Article, including information that might be subject to protection as a trade secret; | *require an owner or operator to accept recommendations or findings of employee representatives.* | recommendations or findings of employee representatives. |
|---|---|---|---|
| 19 CCR 5110.13(b) | An authorized collective bargaining agent may select employee(s) to participate in overall Accidental Release Prevention program development and implementation planning and for employee(s) to participate in each team-based activity pursuant to this Article. | Replace with:<br>*The written employee-participation plan will determine how employees are selected to participate in overall Accidental Release Prevention program development and implementation planning and to participate in Accidental Release Prevention teams and other activities, pursuant to this Article. Any such employees shall be on-site and qualified for the task for which they are selected and shall be subject to all provisions of 5110.13(a).* | The written employee-participation plan will determine how employees are selected to participate in overall Accidental Release Prevention program development and implementation planning and to participate in Accidental Release Prevention teams and other activities, pursuant to this Article. Any such employees shall be on-site and qualified for the task for which they are selected and shall be subject to all provisions of 5110.13(a). |